UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCINA M. TAYLOR,

                Plaintiff,            Civil Action No. 20-12803

v.                                          George Caram Steeh
                                                     United States District Judge

COMMISSIONER OF
SOCIAL SECURITY,                        David R. Grand
                                                     United States Magistrate Judge

                Defendant.
_____/

**REPORT AND RECOMMENDATION ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 16, 19)**

Plaintiff Marcina M. Taylor ("Taylor") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 16, 19), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Taylor is not disabled under the Act is supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment **(ECF No. 19)** be **GRANTED**, Taylor's Motion for Summary

Judgment **(ECF No. 16)** be **DENIED**, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II. REPORT

### A. Background

Taylor was 46 years old at the time of her alleged onset date of November 3, 2016,[1] and at 5'7" tall weighed approximately 215 pounds during the relevant time period. (PageID.278, 281).[2] She completed high school but had no further education. (PageID.78, 282). From 1993 to 2009, she worked on an automobile assembly line at Chrysler, but she took a buyout and stopped working because "she had body aches and health problems and she wanted to be with her grandchildren." (PageID.444, 517). Subsequently, she worked briefly as a janitor and hair stylist. (PageID.78, 89, 282). She now alleges disability as a result of major depressive disorder, migraine headaches, back and leg pain, high blood pressure, stomach issues, and carpal tunnel syndrome. (PageID.81-82, 86-87, 281, 289).

After Taylor's applications for SSI and DIB were denied at the initial level on July 24, 2018 (PageID.156-59, 173-77), she timely requested an administrative hearing, which was held on August 13, 2019, before ALJ Timothy Christensen (PageID.73-93). Taylor, who was represented by attorney Eva Guerra, testified at the hearing, as did vocational expert ("VE") Scott Silver. (*Id.*). On September 26, 2019, the ALJ issued a written

---

[1] Previously, Taylor had applied for DIB and SSI, alleging disability beginning on February 1, 2013. (PageID.122). On November 2, 2016, ALJ Timothy Scallen issued a written decision finding that Taylor was not disabled under the Act. (PageID.122-40). On November 2, 2017, the Appeals Council denied review of this decision. (PageID.147-51).

[2] Citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 13.

decision finding that Taylor is not disabled under the Act. (PageID.51-61). On August 18, 2020, the Appeals Council denied review. (PageID.42-46). Taylor timely filed for judicial review of the final decision on October 19, 2020. (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Taylor's medical record, function and disability reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

**B.     The ALJ's Application of the Disability Framework Analysis**

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

3

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Taylor is not disabled under the Act. At Step One, the ALJ found that Taylor has not engaged in substantial gainful activity since November 3, 2016 (the alleged onset date). (PageID.54). At Step Two, the ALJ found that she has the severe impairments of degenerative disc disease of the lumbar spine and major depressive disorder. (*Id.*). At Step Three, the ALJ found that Taylor's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (*Id.*).

The ALJ then assessed Taylor's residual functional capacity ("RFC"), concluding

4

that she is capable of performing light work, with the following additional limitations: limited to occasional postural activities with no climbing of ladders, ropes, or scaffolds; limited to frequent handling, feeling, and fingering bilaterally; must avoid concentrated exposure to unprotected heights and vibrating tools; and is capable of understanding, remembering, and carrying out simple, routine tasks in a low stress environment with only occasional changes in the work setting and self-paced work with no production-rate work. (PageID.56).

At Step Four, the ALJ found that Taylor is not capable of performing any of her past relevant work. (PageID.59). At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Taylor is capable of performing the jobs of collator (520,700 jobs nationally), router (3,117,700 jobs), and inspector/hand packager (520,700 jobs). (PageID.60). As a result, the ALJ concluded that Taylor was not disabled under the Act from November 3, 2016, through the date of the decision. (*Id.*, PageID.61).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148,

1154 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id*. (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is 'more than a mere scintilla.'" *Id.* (internal citations omitted). Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D. Analysis**

As set forth above, the ALJ found that Taylor has the RFC to perform light work, with the following additional limitations: limited to occasional postural activities with no climbing of ladders, ropes, or scaffolds; limited to frequent handling, feeling, and fingering bilaterally; must avoid concentrated exposure to unprotected heights and vibrating tools; and is capable of understanding, remembering, and carrying out simple, routine tasks in a low stress environment with only occasional changes in the work setting and self-paced work with no production-rate work. (PageID.56).

In reaching this conclusion, the ALJ relied on the opinion of state agency physician Alyce Metoyer, D.O., who reviewed the evidence of record in mid-July 2018, conducted a function-by-function evaluation of Taylor's physical abilities, and concluded that she was able to perform a limited range of light work that required, *inter alia*, standing and/or walking for a total of about six hours in an eight-hour workday and lifting no more than 20 pounds. (PageID.58, 100-03). Additionally, the ALJ credited the opinion of state agency psychologist Rom Kriauciunas, Ph.D., who reviewed the evidence of record in early July 2018, conducted a function-by-function evaluation of Taylor's mental abilities, and concluded that she was able to perform simple, low-stress, routine tasks on a sustained basis. (PageID.58-59, 103-05). In formulating Taylor's RFC, the ALJ found that these state agency reports were consistent with the evidence in the record and largely adopted them in his RFC assessment.[3] (PageID.58-59).

---

[3] The ALJ actually went further in some respects by including additional limitations in his RFC finding that were *more* restrictive than those assessed by the state agency doctors. (PageID.56,

In her motion, Taylor argues that there are flaws with respect to the ALJ's assessment of both her mental and physical impairments, and, as a result, with his determination of her RFC. (ECF No. 16, PageID.637-51). For the reasons set forth below, the Court finds no error warranting remand.

### 1. The ALJ Reasonably Evaluated Taylor's Mental RFC

The ALJ reasonably relied on Dr. Kriauciunas' opinion, finding it "consistent with the evidence in the record." (PageID.58-59). *See* 20 C.F.R. § 404.1520c(c)(2). As the Commissioner persuasively argues, the ALJ "supported that finding by marshaling evidence that is 'adequate' to persuade 'a reasonable mind.'" (ECF No. 19, PageID.666) (citing *Biestek*, 139 S. Ct. at 1154). Consistent with the applicable regulations, the ALJ found that Taylor's subjective complaints about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence, including the objective medical evidence, her history of conservative treatment, the fact that treatment reduced her symptoms, and her own admissions. *See* 20 C.F.R. § 404.1529(c).

To begin with, in evaluating Taylor's allegedly disabling mental impairments, the ALJ reasonably relied on objective medical evidence. *See* 20 C.F.R. § 404.1529(c)(2). As the ALJ correctly noted, Taylor's treating and examining sources[4] reported that she was

---

100, 105). These additional limitations related to the ability to adapt to changes in the work setting, the pace and rate of work, and the postural activity of balancing.

[4] In her motion, Taylor asserts that the ALJ "did not even mention the psychiatric consultative examination from July 2018[,]" which was conducted by Sung-Ran Cho, M.D. (ECF No. 16, PageID.643) (referring to PageID.443-46). This is not accurate; although the ALJ may not have mentioned Dr. Cho by name, he explicitly stated that some of the facts discussed herein were observed "[d]uring th[at] consultative examination[.]" (PageID.55) (citing PageID.445).

alert, pleasant, polite, and cooperative; her memory was normal; she spoke in a normal tone of voice with a moderate amount of spontaneity and productivity; her conversation was coherent and relevant; and she was clean and neatly groomed. (PageID.55, 57, 445, 597). Relatedly, the ALJ found that there was no objective evidence showing remarkable or disabling findings.[5] (PageID.58).

Next, the ALJ reasonably relied on Taylor's history of conservative mental health treatment. *See* 20 C.F.R. § 404.1529(c)(3)(iv), (v). As the ALJ correctly recognized, Taylor had no history of psychiatric hospitalizations, and she received outpatient mental health treatment only *once* during the relevant period (then failed to appear for a follow-up appointment). (PageID.57, 58) (citing PageID.331, 443-46). And, as the ALJ correctly noted, although Taylor told Dr. Cho in July 2018 that she was seeing "a psychiatrist at Beaumont Clinic[,]" the record contains no indication of such treatment. (PageID.58, 443). Taylor does not dispute these statements; rather, she argues that "an absence of mental health treatment – in-patient or otherwise – should not be a determinative factor in assessing mental impairments." (ECF No. 16, PageID.642) (citing *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841 (6th Cir. 2004)). This argument is misplaced, as *Strong* discusses situations where there is evidence that the claimant's "mental condition somehow hindered

---

[5] Taylor does not challenge this finding. Instead, she asserts that "[i]t is unclear what sort of objective evidence the ALJ sought, given that symptoms of mental illness are not detectable by x-rays." (ECF No. 16, PageID.643). But, the governing regulation provides that "objective medical evidence" includes "signs," a term of art that includes "psychological abnormalities that can be observed, apart from [a claimant's] statements," and "[p]sychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception," and they are "shown by observable facts that can be medically described and evaluated." 20 C.F.R. § 404.1502(f)-(g).

him from seeking examination or treatment." *Id.* at 846. Here, the ALJ reasonably found that Taylor had the mental ability to attend doctor's appointments. (PageID.55). Moreover, as discussed herein, the ALJ identified numerous other factors that he evaluated with respect to Taylor's mental impairments, and, as such, he did not suggest that Taylor's conservative mental health treatment was "determinative."

The ALJ also reasonably relied on evidence that Taylor's treatment reduced her allegedly disabling mental health symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(iv). As the ALJ correctly noted, progress notes from a visit to her primary care physician in June 2018 indicate that Taylor started on Cymbalta and she felt "less tearful and more calm" on that medication. (PageID.57, 458). At the same time, the ALJ acknowledged that Taylor "indicated that although the Cymbalta alleviates her symptoms, she often forgets to take it." (PageID.57). This too was a relevant consideration. *See, e.g., Stewart v. Comm'r of Soc. Sec.*, No. 17-11528, 2019 WL 1503127, at *11 (E.D. Mich. Feb. 1, 2019) ("If a claimant does not follow the prescribed treatment without a good reason, the Social Security Administration will not find him disabled.").

The ALJ also relied on Taylor's own statements and admissions. *See* 20 C.F.R. § 404.1529(c)(4). As the ALJ correctly stated, Taylor did not have violent feelings or thoughts of self-harm; she did not have severe mood swings that impaired her functioning; and she stopped working "partly" because she wanted to be with her grandchildren.[6]

---

[6] Taylor claims that her health issues were the "primary" reason she stopped working. (ECF No. 16, PageID.640). Even if that was true, however, it would not undermine the ALJ's finding that she stopped working "partly" to be with her grandchildren. (PageID.55).

(PageID.55, 58, 444, 454, 593). The ALJ also pointed out that Taylor completed a detailed function report and thoroughly responded to questions at the administrative hearing. (PageID.55). Taylor takes issue with the ALJ's reliance on these facts, asserting that it is not "unusual for an individual seeking Social Security disability benefits to devote time and mental energy to remembering and describing her own symptoms, and reporting them to support her claim." (ECF No. 16, PageID.640). Even if that is true, the ALJ did not err in relying on evidence that, when Taylor performed these activities, she was functioning at a level that belied her claim of disability.

Despite all of the evidence relied on by the ALJ in support of his mental RFC finding, Taylor criticizes the ALJ for not explicitly discussing certain pieces of evidence. As an initial matter, however, "it is well settled that [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky*, 167 F. App'x at 507-08 (internal quotation marks omitted). Moreover, most of the evidence Taylor cites in this part of her brief consists of her own subjective complaints. (*E.g.*, ECF No. 16, PageID.641 (ALJ did not mention that Taylor "sits around all day, that she lies down with the television on and does not watch it, and that [she] admitted to being even more depressed lately, and that she has anger outbursts with screaming, yelling, and cussing")). ALJs are not, however, "required to accept … subjective complaints." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). To the contrary, an ALJ's evaluation of subjective complaints is "virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013)

11

(internal quotation marks omitted).[7]

In addition to her subjective complaints, there are two reports from examining physicians that Taylor relies on – one by Elaine Tripi, Ph.D., and one by Dr. Cho. (ECF No. 16, PageID.643-46). Dr. Tripi conducted a Psychosocial Assessment and Employability Evaluation on May 16, 2016 – some six months *before* the alleged onset date, and at the request of Taylor's attorney – diagnosing Taylor with major depressive disorder and opining that she was not capable of sustaining substantial, gainful work activity. (PageID.554-60). Taylor asserts that the ALJ "ignored" Dr. Tripi's assessment (ECF No. 16, PageID.644), but this mischaracterizes the ALJ's decision. Specifically, Dr. Tripi's assessment was Exhibit B9F (PageID.554-60) in the record, and the ALJ explicitly cited that Exhibit in his decision (PageID.59) when discussing "other opinions that predate the alleged onset date of disability ...." Moreover, the ALJ reasonably indicated that Dr. Tripi's assessment had "no probative value" because (a) the ALJ was not adjudicating the issue of whether Taylor was disabled during the time period when Dr. Tripi provided her assessment, and (b) the Agency previously had adjudicated that issue. (*Id.*). Taylor has not demonstrated that either of these findings was erroneous.[8]

---

[7] At any rate, as discussed herein, the ALJ adequately explained why he found Taylor's "statements about the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the testimony and objective medical evidence in the record." (PageID.58). *See supra* at 8-11.

[8] The Court also notes that, in Taylor's prior case, the ALJ afforded "no weight" to Dr. Tripi's assessment because she never treated Taylor; she saw Taylor only once and did so at the request of Taylor's attorney; she provided very little substantive basis or explanation for her assessment; and her assessment was inconsistent with other evidence. (PageID.136-37). Taylor does not seek to discredit – or even address – the reasons articulated by the prior ALJ for discrediting Dr. Tripi's opinion.

Taylor also claims that the ALJ "did not even mention the psychiatric consultative examination from July 2018[,]" which was performed by Dr. Cho. (ECF No. 16, PageID.643). On examination, Dr. Cho assessed anxious affect and depression; Taylor was unable to perform serial 7's; she was diagnosed with dysthymic disorder; and her prognosis was characterized as "poor." (PageID.443-46). According to Taylor, Dr. Cho's report "confirms that Ms. Taylor's already significant documented limitations from just prior to the onset date had not only not abated, but had worsened." (ECF No. 16, PageID.646).

There are two problems with Taylor's arguments. First, contrary to Taylor's assertion, the ALJ explicitly cited to and discussed Dr. Cho's report. Dr. Cho's report was designated as Exhibit B3F (PageID.443-46), an exhibit the ALJ cited at least three times in his decision (PageID.55, 57, 58). Indeed, in discussing the "paragraph B" criteria, the ALJ specifically, and accurately, noted, "[d]uring the consultative examination, the claimant spoke in a normal tone of voice with a moderate amount of spontaneity and productivity (B3F/3). Her conversation was coherent and relevant (Id.)." (PageID.55, 445). Dr. Cho also noted that Taylor drove to the appointment by herself, was "pleasant," "polite and cooperative," and was "in good contact with reality." (PageID.443, 445). And, Dr. Cho wrote that Taylor had reported that she "cannot work because [she has a] heart problem with multi-vessel clogging," not because of any mental health issues. (PageID.443).

Second, state agency psychologist Kriauciunas explicitly addressed Dr. Cho's report before determining that Taylor did not have any mental limitations beyond what the

13

ALJ included in his RFC finding. (PageID.96, 97). The ALJ explicitly relied on Dr. Kriauciunas' report, reasonably finding it "consistent with the evidence in the record." (PageID.58-59). In light of the foregoing, the Court finds no error in the ALJ's failure to discuss Dr. Cho's report in greater detail.

In summary, in pointing to certain pieces of evidence, Taylor appears to invite the Court to reweigh evidence that she believes the ALJ did not address in sufficient detail. But this Court's "task is not to reweigh the evidence. That is solely the province of the [Commissioner]." *Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982); *see also Yonka v. Comm'r of Soc. Sec.*, No. 20-11777, 2021 WL 4785519, at *6 (E.D. Mich. June 28, 2021) ("In effect, Plaintiff is asking the Court to reweigh the evidence, which the Court cannot do."). As discussed herein, the ALJ's evaluation of Taylor's mental RFC is supported by substantial evidence in the record, and the Court finds no error warranting remand as to this issue.

  2. *The ALJ Reasonably Evaluated Taylor's Physical RFC*

As set forth above, at Step Two of the sequential analysis, the ALJ found that Taylor's degenerative disc disease of the lumbar spine was a severe impairment.[9]

---

[9] In her motion, Taylor contends that the ALJ erred at Step Two in declining to find certain other impairments – including "migraines, carpal tunnel syndrome, leg problems, high blood pressure, and stomach issues" – to be severe. (ECF No. 16, PageID.637-38). She claims this is "puzzling, at best, as these were all found to be severe impairments by the ALJ who adjudicated [her] prior application[.]" (*Id.*, PageID.638). This argument fails for at least three reasons. First, although the prior ALJ found that Taylor's migraines were severe, he did not find that the other four physical impairments were severe. (PageID.124). Second, and more importantly, as discussed above, the ALJ resolved the Step Two inquiry in Taylor's favor by finding that she had two severe impairments and proceeding to the next step of the sequential evaluation process. (PageID.54). The ALJ acknowledged, when assessing Taylor's RFC, that he was required to consider the limitations from *all* of Taylor's impairments, including non-severe impairments. (PageID.53).

(PageID.54). Then, in formulating Taylor's physical RFC, the ALJ reasonably relied on Dr. Metoyer's opinion that she was able to perform a limited range of light work, finding that it was consistent with the evidence. (PageID.58, 100-03). *See* 20 C.F.R. § 404.1520c(c)(2). The Court finds persuasive the Commissioner's argument that the ALJ "supported that finding by marshaling evidence that is 'adequate' to persuade 'a reasonable mind.'" (ECF No. 19, PageID.674) (citing *Biestek*, 139 S. Ct. at 1154).

To begin with, in evaluating Taylor's allegedly disabling physical impairments, the ALJ reasonably relied on objective medical evidence. *See* 20 C.F.R. § 404.1529(c)(2). As the ALJ correctly noted, at a consultative examination conducted on July 10, 2018, Habib Gennaoui, M.D. reported that, despite deficits, Taylor walked with a normal gait; did not have any difficulty getting on and off the examining table; and was able to squat, kneel, and walk on her heels and toes.[10] (PageID.55, 449). As the ALJ further indicated, several treatment notes indicate that Taylor appeared well and was in no apparent distress. (PageID.58, 463; *see also* PageID.340, 455, 459, 601, 604, 611). And, the ALJ found that

---

Thus, it is "legally irrelevant" that he did not find that any other impairments were also severe. *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008). Finally, Taylor does not point to any specific limitation that a doctor suggested for her based on her headaches. Rather, in terms of the relevant period, she points only to Dr. Gennaoui's conclusion that her "activity is almost none due to the severity of her back pain and also her recurrent migraine headaches …." (PageID.449). However, Dr. Gennaoui appears to be referencing Taylor's *self-reported* activity level (PageID.448), not a determination that she can engage in no activity. And, to the extent Dr. Gennaoui's statement can be construed as a finding that Taylor is disabled, that finding was owed no deference as disability is an issue reserved exclusively for the ALJ. *See Cosma v. Comm'r of Soc. Sec.*, 652 F. App'x 310, 311 (6th Cir. 2016).

[10] Because the ALJ explicitly and repeatedly relied on Dr. Gennaoui's findings, it is not clear why Taylor asserts that the doctor's report went "largely unnoticed … by the ALJ[.]" (ECF No. 16, PageID.651).

15

there was no evidence to substantiate Taylor's alleged weakness in her legs, numbness, and tingling (PageID.58), a finding Taylor does not challenge.

Next, the ALJ reasonably relied on Taylor's history of conservative treatment for her back impairment during the relevant time period, as well as the fact that that treatment reduced her allegedly disabling symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(iv), (v). As the ALJ correctly recognized, Taylor was supposed to undergo a spinal injection, but her insurance required physical therapy first, which she failed to complete at that time. (PageID.57, 454). When Taylor later attended physical therapy, it resulted in improvement to her functional ability, and a TENS unit improved her pain. (PageID.57, 603). These were relevant considerations.

In light of all of the evidence relied on by the ALJ in support of his physical RFC finding, Taylor criticizes the ALJ for not explicitly addressing certain evidence, and she invites the Court to reweigh other evidence that was discussed. (ECF No. 16, PageID.648-51). For example, Taylor argues that the ALJ "certainly did not compare" a July 2019 MRI of her lumbar spine to one conducted around the alleged onset date, in December 2016, asserting that, "objectively and subjectively speaking," her back impairment progressed during this time period. (*Id.*, PageID.650). But, the ALJ explicitly noted that a December 2016 MRI of Taylor's lumbar spine showed "degenerative change that is most marked at L4-5 with central and bilateral foraminal stenosis[,]" while the July 2019 MRI showed "disc herniation at L1-2, moderate spinal stenosis, progression of L4-5 narrowing, and L5-S1 annular tear[.]" (PageID.57) (citing PageID.383-84, 607). Thus, contrary to Taylor's assertion, the ALJ recognized that her back impairment worsened between December 2016

16

and July 2019; nevertheless, Taylor has not pointed to any evidence establishing that her limitations progressed *to the point that they were disabling*.[11]

Taylor also mischaracterizes the ALJ's evaluation of her back impairment in two other respects. First, she asserts that the ALJ "[a]cknowledg[ed] that [she] had finally reached the point where surgery was the only option[.]" (ECF No. 16, PageID.649). What the ALJ actually said, however, was far more benign – namely, that Taylor "testified that she intended to undergo back surgery to alleviate her symptoms and the record reflects the same[.]" (PageID.59) (citing PageID.76, 612). Taylor also asserts that the ALJ "speculated (after stating he cannot speculate) that we can expect a better prognosis after surgery." (ECF No. 16, PageID.649). What the ALJ actually said, however, is that "[t]here are no records to confirm if [Taylor] went through with the elected surgery or what the outcome [wa]s," and that while he "cannot speculate as to the results of surgery, [] [one] can expect a better prognosis after surgery." (PageID.57, 59). Read together, these comments merely reflect the ALJ's recognition that the surgery, assuming Taylor had it, may or may not be successful, but that she would be unlikely to undergo a surgery *expecting* it to worsen her condition. Nothing about the ALJ's statements suggests any sort of reversible error. In any event, because Taylor does not contend that she underwent the surgery during the relevant period, she cannot sustain her burden of establishing that the ALJ's consideration of it prejudiced her. Thus, the Court finds no error warranting remand

---

[11] For the reasons discussed herein, the ALJ reasonably found that Taylor's physical limitations were not disabling by the end of the pertinent period. If they are now, or become so in the future, Taylor obviously may submit a new application for disability benefits.

17

in the ALJ's evaluation of Taylor's physical RFC.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, that decision should be affirmed.

## III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 19)** be **GRANTED**, Taylor's Motion for Summary Judgment **(ECF No. 16)** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: December 27, 2021  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. L.R. 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also*

*Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. L.R. 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 27, 2021.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
